UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 11-80155-CR-MARRA/HOPKINS(s)(s)

UNITED STATES OF AMERICA

                         Plaintiff,

v.

PAUL JOYCE,

                         Defendant.

_____/

FILED by _____ D.C.

DEC 1 2 2012

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## REPORT AND RECOMMENDATION ON THE DEFENDANT PAUL JOYCE'S MOTION TO SUPPRESS EVIDENCE AND FOR A *FRANKS* HEARING (DE 312)

**THIS CAUSE** comes before the Court upon an order of referral (DE 494).  The Court

has before it the Defendant's motion to suppress and for a *Franks* hearing (DE 312), the

Government's response (DE 329), and the Defendant's reply (DE 344).  For the reasons that

follow, this Court RECOMMENDS that the Defendant's motion be DENIED.

## BACKGROUND

The Defendant PAUL JOYCE was indicted, along with several co-defendants in a

Second Superseding Indictment on June 7, 2012 (DE 507), on charges of conspiracy to illegally

distribute anabolic steroids, illegal distribution of anabolic steroids, conspiracy to illegally

distribute human growth hormone and illegal distribution of human growth hormone.  On June

25, 2011, Magistrate Judge Ann Vitunac signed a search warrant for 8845 N. Military Trail Suite

400, Palm Beach Gardens, FL 33410, the location of Palm Beach Life Extension ("PBLE"), a

business owned and operated by defendant Paul Joyce and codefendant Charles Cook.  The items

to be seized included lists of customers; customer records; employee lists; records relating to the

receipt, sale, delivery, dispensing, and disposition of controlled substances; and other materials. The warrant was executed on June 28, 2011, along with search warrants for four other locations: The Health and Rejuvenation Center ("THARC") in Palm Beach Gardens, Treasure Coast Specialty Pharmacy ("TCSP") in Jensen Beach, Infinity Medical & Rehab in West Palm Beach, and a storage unit at Security Self Storage in Port St. Lucie.  During the search of PBLE, the Government seized customer records detailing orders for steroids, human growth hormone ("hGH"), and other drugs.

Defendant requests that the Court suppress this evidence and/or grant a *Franks* hearing, in which defendant would have an opportunity to cross-examine the affiant regarding the veracity of the affidavit.

## ANALYSIS

Affidavits supporting search warrants are presumptively valid.  *Franks v. Delaware*, 438 U.S. 154, 171 (1978).  When a defendant moves to suppress evidence based on alleged misrepresentations or omissions in a search warrant affidavit, he is entitled to an evidentiary hearing only if he makes a substantial preliminary showing that statements were false or made with a reckless disregard for the truth.  *Id.*  A substantial preliminary showing

> must be more than conclusory and must be supported by more than a mere desire to cross-examine.  [T]hose allegations must be accompanied by an offer of proof. [T]hey should be accompanied by a statement of supporting reasons.  Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

*Id.* at 170.

Negligent or innocent mistakes do not necessitate a *Franks* hearing or suppression.  *Id.* And the requirement that an affidavit be "truthful" does not mean that the affidavit is "truthful" in the sense that every fact recited in it is necessarily correct; rather, it is "truthful" in the sense

that the information put forth is believed or is appropriately accepted by the affiant as true with no reckless disregard for the truth. *Id.* at 165. The Supreme Court, in a First Amendment context, has found that reckless disregard for the truth requires a showing that the affiant entertained serious doubts as to the truth of his publication. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). The defendant must "point out specifically the portion of the warrant affidavit that is claimed to be false" and his allegations of deliberate falsehood or reckless disregard for the truth "must be accompanied by an offer of proof." *Franks*, 438 U.S. at 171. As far as omissions, a warrant will be invalidated only if the inclusion of the omitted information would have prevented a finding of probable cause. *Madiwale v. Savaiko*, 117 F.3d 1321, 1327 (11th Cir. 1997).

A defendant must show both (1) "that the alleged misrepresentations or omissions were knowingly or recklessly made," and (2) "that the result of excluding the alleged misrepresentations and including the alleged omissions would have been a lack of probable cause for issuance of the warrant." *United States v. Novaton*, 271 F.3d 968, 986–87 (11th Cir. 2001); *United States v. Cross*, 928 F.2d 1030, 1040 (11th Cir. 1991). A warrant is nonetheless valid "when material that is the subject of the alleged falsity or reckless disregard is set to one side, [and] there remains sufficient content in the warrant affidavit to support a finding of probable cause." *Franks*, 438 U.S. at 171-72.

An evaluation of probable cause entails reading the application and affidavit as a whole, not reading words and phrases read out of the context in which they were written. *See, e.g., United States v. Long*, 674 F.2d 848 (11th Cir. 1982); *United States v. Cortez*, 449 U.S. 411 (1981). The magistrate judge is permitted to utilize common sense to construe the affidavit in a realistic and non-technical manner. *See, e.g., United States v. Harris*, 403 U.S. 573 (1971). The

3

magistrate judge need only determine that there is a fair probability that evidence of a crime will be found in a particular place, and her decision is entitled to considerable deference. *Illinois v. Gates*, 462 U.S. 213, 237 (1983); *see also, e.g., United States v. Cantu*, 625 F. Supp. 656 (N.D. Fla. 1985), aff'd 791 F.2d 940 (11th Cir. 1986).

Defendant first attacks as false and misleading paragraph 5 of the affidavit, in which the affiant lists the four statutory provisions that he believed defendant and codefendants had violated.  Two of these statutory provisions were 21 U.S.C. §§ 841(a)(1) and 846.  The first section, Section 841(a)(1), prohibits the unlawful distribution and dispensing of controlled substances.  The affiant went on to list specific controlled substances, including oxycodone and anabolic steroids.  The second section, Section 846, prohibits conspiracy to violate other Title 21 offenses, including Section 841 mentioned above, and Section 843(a)(3).  Section 843(a)(3) prohibits obtaining a controlled substance through fraud or forgery.   Defendant correctly points out that: (1) the affidavit contains no other information on oxycodone distribution, other than in paragraph 21, where oxycodone is once again mentioned as an example of a controlled substance; and (2) the affidavit contains no information relating to fraud or forgery.  These two citations were mistakenly included in this list of statutory provisions, but not included in any portion of the probable cause contained in the affidavit.

This oversight appears to be the result of negligence and not through recklessness or intention.  In Attachment B to the affidavit, which lists the items to be searched and seized, the affiant states "[a]ll records, documents, and materials ... which relate to conspiracy to distribute and distribution of controlled substances, specifically anabolic steroids, and hGH, from Palm Beach Life Extension Inc."  Affid., Attach. B.  The attachment does not include oxycodone, and the magistrate judge determined that the affidavit established probable cause to search for and

seize the items listed in Attachment B.  Striking from the affidavit the two references to oxycodone and the one reference to 21 U.S.C. § 843(a)(3) would have no effect on the probable cause finding.

Pointing to paragraphs 5 and 18 of the affidavit, defendant also raises a dispute over the definition of "dispensing" under 21 U.S.C. §§ 841 and 846.  Defendant argues that there was no probable cause to search PBLE for evidence of illegal dispensing or distributing of steroids and hGH, because under Florida Statutes § 465.003(6), "dispensing" excludes actual sales or administration of drugs.  In other words, defendant contends that PBLE was not dispensing drugs, as "dispensing" is defined under Florida law.

However, the affidavit sets forth facts likely constituting both dispensing and distributing as those terms are defined under the Controlled Substances Act.  As the affiant set forth, in paragraph 18, Treasure Coast Specialty Pharmacy records show that PBLE received steroids at its business address for the customer.

Defendant next complains that the affiant noted information from defendant's business website obtained close to the date of issuance of the search warrant.  The affiant's use of this information was proper and contributed to the finding of probable cause.  There is no error in including both older and more recent evidence of a crime in a search warrant affidavit.

Defendant also alleges that information contained in paragraph 20, on the pharmacy's billing practices, is irrelevant to PBLE and therefore misleading to the magistrate judge.  However, by detailing that the pharmacy sends billing invoices to client businesses like PBLE and THARC, and then receives payment directly from client businesses, the information helped establish probable cause that financial records relating to the illegal distribution and dispensing of steroids and hGH would be found at the businesses.

Defendant raises another argument concerning the legal definition and interpretation of terms and statutes mentioned in the affidavit.  He contends that the affiant "misinterpreted" and "over-extended" the meaning and purpose of the Ryan Haight Online Pharmacy Act ("the Ryan Haight Act"), thereby misleading the magistrate judge. 21 U.S.C. 829(e)

However, PBLE falls within the Ryan Haight Act's ambit because it is the "agent, intermediary, or other entity" that uses the internet in bringing together a customer and the seller of drugs.  *Id.* at 21 U.S.C. § 841(h)(2).

Defendant also disputes the affiant's listing of Florida Administrative Code Rules and Florida Statutes regarding a Florida-licensed physician's recordkeeping obligations.  However, because the Florida Administrative Code Rules and Florida Statutes mandate that physicians keep such records, inclusion of their provisions was relevant.

There was sufficient information provided to establish probable cause as to PBLE's criminal activity.  PBLE advertised on its website that it was a "fully licensed medical clinic" and that it administered hGH and testosterone therapies under the supervision of medical staff, although PBLE had no healthcare-related license from state or federal authorities.  PBLE advertised the goals of its hGH therapy, including wrinkle removal and weight loss, which are unauthorized uses for hGH.  Records from Treasure Coast Specialty Pharmacy, where PBLE fulfilled some of its customers' orders, show that the pharmacy shipped drug orders to PBLE at its business address, for distribution by PBLE to its customers, although PBLE holds no DEA registration to dispense controlled substances.

In addition, evidence connects PBLE to THARC, a steroids and hGH business owned and operated by codefendants Donald Montano and Kevin Johnson.  The owners of PBLE, defendant Paul Joyce and codefendant Charles Cook, as well as codefendants Joyce, Cook, Montano,

6

Johnson, and Dr. Jeffrey Perelman, were once all business associates.

More evidence of the connection between PBLE and THARC is apparent from their websites. Both websites, as detailed in paragraphs 11 and 12 of the affidavit, advertise that PBLE and THARC offer hGH and testosterone "programs" or "therapies," advertise Dr. Jeffrey Perelman as their "Medical Director," who "oversees" medical staff; and hold themselves out as "clinics" offering medical services through Dr. Perelman.

The connection between the two businesses was further confirmed by a THARC sales employee who quit working at THARC some time before January 2008. Affid., ¶ 13. This former employee confirmed that PBLE and THARC used the same physician, codefendant Dr. Perelman, and nurse practitioner to review and approve customer orders for products sold by PBLE and THARC. Affid., ¶ 13. The former employee also stated that Dr. Perelman never examined a customer, and that she generated the original order for steroids and hGH that was forwarded to Dr. Perelman, who approved approximately 99% of the orders. Further, she was sometimes instructed by the nurse practitioner to write certain things into a customer's file to justify the "prescription" for the drugs.

According to Treasure Coast Specialty Pharmacy records, Dr. Perelman issued approximately 4,430 "prescriptions" for anabolic steroids to customers in forty-eight states, during a five-month period, through his position as Medical Director for THARC and PBLE. This evidence, coupled with the former THARC employee's statement that Dr. Perelman never examined a patient, established probable cause that Dr. Perelman was paid by both PBLE and THARC to sign off on drug orders for customers without a valid physician-patient relationship, in violation of the Controlled Substances Act.

The undercover buys done with THARC also contributed to probable cause that PBLE

operated illegally, because they involved Dr. Perelman – Medical Director for both THARC and PBLE. *See* Affid., ¶¶ 16 and 17.  In both undercover buys with THARC, Dr. Perelman prescribed controlled substances and hGH without speaking with or physically examining the customer.  This information shows that Dr. Perelman operated outside the usual course of medical practice, and his relationship with PBLE owners made it likely that PBLE knew how he operated.

Defendant's motion also complains about the affiant's inclusion, in paragraph 15, of an April 2007 consumer complaint against the nurse practitioner employed by both THARC and PBLE at the time, David Peterson without including information regarding the resolution of this complaint.  A mere tip, as long as it is corroborated by other incriminating evidence, can be part of the basis leading to probable cause. *United States v. Chaves*, 169 F.3d 687, 691 (11th Cir. 1999).  Here the consumer complaint provides some evidence, but is hardly essential to a probable cause determination.  Moreover, it was not alleged that the complaint was substantiated.

Finally, defendant argues that the information from the former THARC employee, from the consumer complaint, and from the undercover buys, is "stale" and should not have been considered by the magistrate judge.  "[I]f an affidavit recites activity indicating protracted or continuous conduct, time is of less significance." *United States v. Buscaro*, 742 F.2d 1335, 1345-46 (11th Cir. 1984); *see also United States v. Magluta*, 198 F.3d 1265 (11th Cir. 1999) (finding that ongoing criminal activity can defeat a staleness claim).  Here, the affidavit described criminal activity that appeared to have begun as early as 2007, with the consumer complaint.  Activity was continuing as late as June 24, 2011, when the affiant observed that PBLE was advertising itself as a "fully licensed medical clinic" offering testosterone and hGH for unauthorized purposes, with Dr. Perelman as a Medical Director.

8

All of the evidence included in the affidavit, viewed as a whole and under the totality of the circumstances, established probable cause that a search of PBLE would render evidence that defendant was illegally distributing and dispensing controlled substances and hGH. The magistrate judge's determination was correct.

Even if there was a lack of probable cause, the good faith exception under *United States v. Leon*, 468 U.S. 897 (1984), would apply because there is no evidence that the affiant knowingly or recklessly misled the magistrate judge. Accordingly, suppression of evidence seized pursuant to the search is unwarranted under *Leon*.

Where the defendant fails to make the necessary preliminary showing he is not entitled to a *Franks* hearing. *See United States v. Vann*, 336 Fed. App'x 944, 948-49 (11th Cir. 2009) (self-serving statements and unsworn assertions do not warrant a *Franks* hearing); *United States v. Kapordelis*, 569 F.3d 1291, 1309 (11th Cir. 2009) (evidentiary hearing not warranted in child pornography case where magistrate judge considered affidavit with the omissions and additions proposed by defendant and still found probable cause); *United States v. Williams*, 146 Fed. App'x 425, 430-31 (11th Cir. 2009) (disagreeing with the facts as stated in the search warrant affidavit is not a basis for a *Franks* hearing); *United States v. Sarras*, 575 F.3d 1191 (11th Cir. 2009) (defendant not entitled to hearing where affidavit did not identify location of camera filled with images in sexually explicit conduct case); *United States v. Arbolaez*, 450 F.3d 1283, 1294 (11th Cir. 2006) (reference to unsworn statement by individual denying that he made statement attributed to him in the affidavit failed to make the necessary substantial preliminary showing); *United States v. Jenkins*, 901 F.2d 1075, 1080 (11th Cir. 1990) (with no offer of proof showing that the agent deliberately excluded information, defendant was not entitled to evidentiary hearing).

Accordingly, Defendant's motion to suppress evidence and request for a *Franks* hearing (DE 312) should be denied.

**NOTICE OF RIGHT TO OBJECT**

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Senior United States District Judge Kenneth A. Marra within fourteen (14) days after being served with a copy. See 28 U.S.C. § 636(b)(1)(C). Failure to file timely objections may limit the scope of appellate review of factual findings contained herein. See *United States v. Warren*, 687 F.2d 347, 348 (11th Cir.1982), *cert. denied*, 460 U.S. 1087 (1983).

DONE AND SUBMITTED in Chambers this 12 day of December, 2012, at West Palm Beach in the Southern District of Florida.

JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE